UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**CHARLES B. BLACKWOOD,**

    **Plaintiff,**

v.                                                   Case No: 5:24-cv-180-MMH-PRL

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

_____

**REPORT AND RECOMMENDATION**[1]

Plaintiff appeals the administrative decision denying his application for a period of disability and disability insurance benefits ("DIB"). Upon a review of the record, the memoranda, and the applicable law, I recommend that the Commissioner's decision be reversed and remanded.

**I.  BACKGROUND**

For the sake of convenience, the administrative history, which is not in dispute, is copied from the Government's brief:

> On March 8, 2022, Plaintiff filed a Title II application for a period of disability and disability insurance benefits alleging disability beginning on August 1, 2021 (Tr. 238-42). The Social Security Administration denied Plaintiff's application initially and on reconsideration (Tr. 114-18, 130-33). ALJ Douglas A. Walker held hearings in September and October of 2022;

---

[1] Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions. *See* Fed. R. Civ. P. 72(b)(3); Fed. R. Crim. P. 59(b)(2); 28 U.S.C. § 636(b)(1)(B). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

> Plaintiff and a vocational expert (VE) testified (Tr. 19-60). On December 1, 2023, the ALJ issued a decision finding Plaintiff not disabled within the meaning of the Social Security Act (the Act)1 from his alleged onset date (AOD) through the date of the decision (Tr. 81-95). The Appeals Council denied Plaintiff's request for review (Tr. 1-5). This case is now ripe for judicial review. See 42 U.S.C. § 405(g).

(Doc. 12 at 2).

As of Plaintiff's alleged onset date of disability, Plaintiff was 50 years old. (Tr. 62). Plaintiff has a high school education, two years of college, and past work experience as a certified nurse assistant and a real estate agent. (Tr. 34, 270). Based on a review of the record, the ALJ found that the claimant has severe impairment disorders of the spine and post-traumatic stress disorder. (Tr. 84). The ALJ found that the claimant did not have an impairment or combination of impairments that met or medically equaled an impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the listings) or that functionally equaled the listings. (Tr. 85-87).

The ALJ found Plaintiff had the residual functional capacity ("RFC") to perform less than the full range of light work with the following limitations:

> [T]he claimant can lift and carry 10 pounds frequently and 20 pounds occasionally; stand and/or walk for 6 hours; sit for 6 hours; not climb ladders exceeding 6 feet, ropes, or scaffolds; can occasionally climb ramps and stairs; frequently perform pushing and pulling motions with the upper extremities (reference to hand controls); perform occasional postural activities; and perform occasional overhead reaching and frequent reaching in all other directions, handling, and fingering. Mentally, the claimant can perform simple, routine, and repetitive tasks; he can understand, remember, and carry out job instructions associated with simple, routine, and repetitive tasks; he can make work-related judgement related decisions; he can respond appropriately to supervisors and coworkers in work situations; and he can deal with changes in routine work settings.
>
> However, he should avoid stressful situations such as frequently working with coworkers in a team setting; frequently working

>directly with the public; working with supervisors or coworkers where frequent interpersonal interactions are required; and working at a strict production rate pace. He should work in an environment where he makes few decisions and uses little judgement.

(Tr. 87-88).

Based on the RFC and considering the testimony of a vocational expert (VE), the ALJ found that Plaintiff could perform other jobs that existed in significant numbers in the national economy, including small product assembler, routing clerk, and office helper. (Tr. 94-95). Accordingly, the ALJ determined Plaintiff was not disabled from August 1, 2021 (the alleged onset date), through the date of decision. (Tr. 95).

## II.  STANDARD OF REVIEW

A claimant is entitled to disability benefits when he or she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

The Commissioner has established a five-step sequential analysis for evaluating a claim of disability, which is by now well-known and otherwise set forth in the ALJ's decision. *See* 20 CFR §§ 404.1520(a), 416.920(a); *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The claimant, of course, bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).

The scope of this Court's review is limited to a determination of whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*,

402 U.S. 389, 390 (1971)). Indeed, the Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as the finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). This is clearly a deferential standard.

### III. DISCUSSION

Plaintiff raises two issues on appeal: (1) whether the ALJ erred in relying on the vocational expert's testimony; and (2) whether the ALJ properly considered Plaintiff's subjective allegations.

#### A. THE ALJ'S RELIANCE ON VOCATIONAL EXPERT TESTIMONY

The Court first turns to Plaintiff's argument that the ALJ erred in relying on the vocational expert testimony because there is an apparent conflict between the Dictionary of Occupational Titles (DOT) and the vocational expert's testimony as it relates to the jobs of small product assembler and routing clerk. (Doc. 11 at 10-11). Plaintiff argues that, due to an apparent conflict between the vocational expert's testimony and the DOT, remand is warranted, citing *Dillon v. Saul*, No. 8:19-CV-1277-T-AEP, 2020 WL 5640770, at *4 (M.D.

Fla. Sept. 22, 2020). For the reasons explained below, I submit that remand is appropriate in the circumstances presented in this case.

Under SSR 00-4p, when an apparent unresolved conflict exists between VE evidence and the DOT, the ALJ "must elicit a reasonable explanation for the conflict before relying on the VE [ ] evidence to support a determination or decision about whether the claimant is disabled." 2000 WL 1898704, at *2 (Dec. 4, 2000).[2] The ALJ must inquire, on the record, whether a conflict exists. *Id.* If a conflict exists, the ALJ must resolve the conflict by determining whether the explanation provided by the VE is reasonable and provides a basis for relying on the VE testimony rather than on the information contained in the DOT. *Id.* Reasonable explanations may include the availability of information about a particular job's requirements or about occupations not listed in the DOT but available in other reliable publications, information obtained directly from employers, or from a VE's experience in job placement or career counseling. *Id.*

In considering the application of SSR 00-4p, the Eleventh Circuit has concluded that ALJs maintain "an affirmative duty to identify apparent conflicts between the testimony of a [VE] and the DOT and resolve them." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1356 (11th Cir. 2018). In carrying out that duty, the ALJ must do more than simply ask the VE whether his or her testimony is consistent with the DOT. *Id.* According to the Eleventh Circuit, when a conflict has been identified, SSR 00-4p requires the ALJ to provide a reasonable explanation for the discrepancy and to detail in the decision how the ALJ resolved

---

[2] Pol'y Interpretation Ruling : Titles II & XVI: Use of Vocational Expert & Vocational Specialist Evidence, & Other Reliable Occupational Info. in Disability Decisions, SSR 00-4P (S.S.A. Dec. 4, 2000).

the conflict. *Id.* The failure to do so means that the ALJ's decision, if based upon the contradicted VE testimony, is not supported by substantial evidence. *Id.*

An "apparent conflict" is one "that is reasonably ascertainable or evident from a review of the DOT and the VE's testimony." *Id.* at 1365. "At a minimum, a conflict is apparent if a reasonable comparison of the DOT with the VE's testimony suggests that there is a discrepancy, even if, after further investigation, that turns out not to be the case." *Id.*

### 1. Jobs of Small Product Assembler and Routing Clerk

Plaintiff notes here that Plaintiff's RFC included the limitation of avoiding "working at a strict production rate pace." (Tr. 88). Plaintiff contends that the DOT descriptions for two of the representative jobs identified by the VE, small product assembler and routing clerk, include language that creates an apparent discrepancy with the VE's testimony that an individual with Plaintiff's RFC could perform those jobs.

First, Plaintiff argues that the description of small products assembler conflicts with the RFC limitation to avoid "working at a strict production rate pace." According to the DOT, the full description of small products assembler is as follows:

> Performs any combination of following repetitive tasks on assembly line to mass produce small products, such as ball bearings, automobile door locking units, speedometers, condensers, distributors, ignition coils, drafting table subassemblies, or carburetors: Positions parts in specified relationship to each other, using hands, tweezers, or tongs. Bolts, screws, clips, cements, or otherwise fastens parts together by hand or using handtools or portable powered tools. Frequently works at bench as member of assembly group assembling one or two specific parts and passing unit to another worker. Loads and unloads previously setup machines, such as arbor presses, drill presses, taps, spot-welding machines, riveting machines, milling machines, or broaches, to perform fastening, force fitting, or light metal-cutting operation on assembly line. May be assigned to different work stations as production needs require or shift from

> one station to another to reduce fatigue factor. May be known according to product assembled.

1991 WL 679050, Assembler, Small Products I, DICOT 706.684-022.

Plaintiff contends that the definition's references to "repetitive tasks on assembly line to mass produce small products," and "production needs" demonstrates a conflict between the DOT and the vocational expert's testimony, warranting remand, citing *Dillon v. Saul*, No. 8:19-CV-1277-T-AEP, 2020 WL 5640770, at *4 (M.D. Fla. Sept. 22, 2020) (remanding for ALJ to address apparent conflict between the VE's testimony and the DOT where RFC contained limitation regarding "production rate or pace work comparable to that of an assembly line where one worker's pace affects the entire production process.").

Plaintiff presents the same argument regarding the job of routing clerk, defined in the DOT as follows:

> Sorts bundles, boxes, or lots of articles for delivery: Reads delivery or route numbers marked on articles or delivery slips, or determines locations of addresses indicated on delivery slips, using charts. Places or stacks articles in bins designated according to route, driver, or type. May be designated according to work station as Conveyor Belt Package Sorter (retail trade). May sort sacks of mail and be known as Mail Sorter (r.r. trans.).

1991 WL 672133, Routing Clerk, DICOT 222.687-022.

Plaintiff suggests that this Court's reasoning in *Dillon* also applies in the instant case. In *Dillon*, the Court considered a similar argument regarding the jobs of sorter and routing clerk and reasoned that "the use of conveyors or conveyor belts appears to conflict with a limitation to jobs not requiring a production rate or pace work comparable to that of an assembly line where one worker's pace affects the entire production process." 2020 WL 5640770, at *4. The Court further noted, that, while every job involving the use of a convey or conveyor belt may not require production rate or pace work comparable to an assembly

line, the Court concluded, "[e]ven if, after further investigation, it turns out that no conflict exists, resolution of such discrepancy is better left to the ALJ with input and insight from the VE." *Id.*

In response, Defendant argues that "nothing in the entire description indicates that a small products assembler would be working at a 'strict' production rate pace." (Doc. 12 at 8). Defendant also contends that *Dillon* can be distinguished from the instant case because in *Dillon* the plaintiff had the stricter limits of "no production rate or pace work." 2020 WL 5640110, at *1.

The Court therefore must consider whether, upon a reasonable comparison of the DOT with the VE's testimony, a discrepancy exists as to either or both of these jobs. Notably, when considering this same issue in *Dillon,* this Court was mindful that that the jobs at issue referenced the use of conveyors or conveyor belts, the significance being that "one worker's pace affects the entire production process." 2020 WL 5640770, at *4. Here, the Court notes that the job of small products assembler is defined to involve "tasks on assembly line" and that production needs may require shifting from one station to another "to reduce fatigue factor." 1991 WL 679050. Similarly, the job of routing clerk also references "Conveyor Belt Package Sorter," and the undersigned notes that this same job was expressly considered in *Dillon* regarding the worker's pace affecting the entire production process. 2020 WL 5640770, at *4. And while here Plaintiff's limitation is to avoid "strict production rate pace," it is not clear how that limitation relates to the representative jobs identified by the VE as distinguished from "jobs not requiring a production rate," as was the case in *Dillon*. In other words, it is not clear whether there is any meaningful difference between the production rate pace limitation in this case as compared to the prohibition regarding production rate work in *Dillon*. At a

minimum, the DOT definitions of both these jobs suggest that each worker's pace affects the entire process.

Further, although the possibility exists that the small product assembler and routing clerk jobs may not require production rate or pace of work comparable to an assembly line, "the record is unclear as to whether the jobs identified by the VE in this instance involve such work." See *id.* Presented with this same issue in *Dillon*, this Court determined, "[e]ven if, after further investigation, it turns out that no conflict exists, resolution of such discrepancy is better left to the ALJ with input and insight from the VE." *Id.* Accordingly, the undersigned finds that an apparent conflict exists between the VE's testimony regarding the jobs of small products assembler and routing clerk and the DOT, and that discrepancy should be resolved by the ALJ.

### 2. Job of Office Helper

In his decision, the ALJ relied on the VE's testimony that an individual with Plaintiff's RFC was capable of performing the representative jobs of small product assembler, routing clerk, <u>and</u> office helper. Plaintiff's argument regarding a discrepancy arising from the RFC restriction regarding "a strict production rate pace" applies only to the jobs of small product assembler and routing clerk. Accordingly, as Plaintiff argues, that leaves only the office helper job with reportedly 13,800 jobs available in the national economy. Plaintiff argues that remand is warranted for the ALJ to determine whether the position of office helper exists in significant numbers in the national economy, citing *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1311 (11th Cir. 2021). Put another way, Plaintiff maintains that the error is not harmless given the Eleventh Circuit's decision in *Viverette*.

In *Viverette*, when an ALJ "apparently treated . . . cumulatively" three different jobs "for purposes of the 'significant numbers' determination," the Eleventh Circuit was "hesitant to make any factual determinations about whether [two untainted jobs] exist in significant numbers in the national economy" after one job was removed for error in the VE's testimony. *Viverette*, 13 F.4th at 1318. There, the ALJ "based her finding of fact on the VE's testimony about a total number of 125,000 jobs, without considering an apparent conflict that affected 104,000 of those jobs." *Id.* The Eleventh Circuit reversed and remanded for additional consideration at step five. *Id.*

In response, Defendant states that Plaintiff's *Viverette* argument is premised on Plaintiff's prior argument regarding a discrepancy between the DOT and the VE testimony being invalid, and that Plaintiff has not shown that the ALJ's step five finding regarding the job numbers was unreliable and unsupported by substantial evidence. Defendant contends that no additional fact-finding is needed in this case and that remand is not necessary. (Doc. 12 at 9).

A review of the landscape of cases within the Eleventh Circuit applying *Viverette* yields mixed results. On one hand, there appears to be a trend within the Middle District of Florida to reverse and remand cases involving a *Viverette* error. In *Charriez v. Comm'r* of Soc. Sec., No. 6:23-CV-1972-RMN, 2024 WL 5323731, at *4 (M.D. Fla. Nov. 21, 2024), in circumstances like this case, the Court stated "[r]emand aligns with both the general practice of administrative law and, more specifically, how most courts within the Eleventh Circuit remedy *Viverette*-type errors in social security cases." The Court included a list of cases remanded due to this issue:

> Furthermore, within the context of review of social security decisions, most post-*Viverette* courts "have remanded cases to the

agency when an apparent conflict eliminates jobs the plaintiff can perform—even though the ALJ identified other jobs and their numbers—because the ALJ did not make a specific finding as to whether the remaining jobs are independently of a significant number." *Dionne v. Comm'r of Soc. Sec.*, No. 8:21-cv-2962, 2023 WL 1452201, at *11 (M.D. Fla. Jan. 13, 2023), *report and recommendation adopted*, 2023 WL 1441821 (M.D. Fla. Feb. 1, 2023) (remanding because ALJ erred in relying on the VE's testimony, because it does not constitute substantial evidence) (citing *Ledford v. Comm'r of Soc. Sec.,* No. 8:20-cv-2516, 2022 WL 2195001, at *4-5 (M.D. Fla. June 1, 2022) (recommending remand under *Viverette* where ALJ did not make independent finding that jobs existed in significant numbers, and at least one job was eliminated because of an apparent conflict), *report and recommendation adopted*, 2022 WL 2193158 (June 17, 2022)); *see also Prince v. Kijakazi*, No. 1:21-cv-110, 2022 WL 1156951, at *10 (S.D. Ala. Apr. 19, 2022); *Grech v. Kijakazi*, No. 8:20-cv-1254, 2022 WL 485111, at *6 (M.D. Fla. Feb. 17, 2022); *Cisneros v. Comm'r of Soc. Sec.*, No. 2:20-cv-873, 2022 WL 354717, at *3 (M.D. Fla. Feb. 7, 2022); *Franklin v. Comm'r of Soc. Sec.*, No. 8:20-cv-1954, 2022 WL 2294062, at * 5 (M.D. Fla. Feb. 8, 2022); *Roussin v. Comm'r of Soc. Sec.*, No. 2:20-cv-905, 2021 WL 6205948, at *16 (M.D. Fla. Dec. 16, 2021), *report and recommendation adopted*, 2022 WL 19698 (Jan. 3, 2022); *Rodriguez v. Kijakazi*, No 8:20-cv-1232, 2021 WL 6127795, at *4 (M.D. Fla. Nov. 2, 2021), *report and recommendation adopted*, 2021 WL 6126964 (Dec. 27, 2021)); *Wickersham v. Comm'r of Soc. Sec.*, No. 8:22-cv-1403, 2023 WL 5970918, at *5 (M.D. Fla. Sept. 14, 2023). The Court agrees with these courts. *Viverette*-type errors require remand unless the decision contains factual findings about the proffered job categories both singly and in combination.

*Id.* at *5.

On the other hand, in *Charriez*, the Court also observed that "a minority of courts have refused to rigidly apply *Viverette* and remand decisions containing similar errors," citing *Denmark v. Kijakazi*, No. 8:20-cv-2852-AEP, 2022 WL 831903, at *8 (M.D. Fla. Mar. 21, 2022) (finding that remand under *Viverette* would be "a useless formality when substantial evidence already supports the ALJ's conclusion" when "a small percentage" of jobs are

affected by error) and *Rodriguez v. Comm'r of Soc. Sec. Admin.*, No. 8:21-cv-3002-DNF, 2022 WL 4364506, at *5 (M.D. Fla. Sept. 21, 2022) (finding harmless error when apparent conflict eliminated around 36 percent of possible jobs).

In *Charriez*, the Court further reasoned:

> Put simply, judicial review in this context depends on the findings articulated in the decision. For example, in *Soleimani v. O'Malley*, No. 8:23-cv-917, 2024 WL 3983019, at *4 (M.D. Fla. Aug. 29, 2024), the court held that the ALJ did not err at step five because "the ALJ made the specific finding that the three jobs 'are considered both singly and in combination.' " That factual finding permitted the reviewing court to "excis[e] the one problematic and [a] second possibly problematic job" from consideration and consider whether substantial evidence supported the ALJ's findings as to the third job position. Id. (citing *Gonzalez v. Comm'r of Soc. Sec.*, No. 8:22-cv-1403, 2024 WL 489494, at *7 (M.D. Fla. Feb. 8, 2024) (distinguishing *Viverette* when an ALJ found "each of the proffered jobs, individually, exists in significant numbers in the national economy, and expressly considered the available number of jobs for the proffered positions both singly and in combination")).

2024 WL 5323731, at *4.

Notably, this Court found harmless error in *Daniels v. Dudek*, No. 8:23-CV-2903-JRK, 2025 WL 814846, at *4 (M.D. Fla. Mar. 14, 2025). The Court reasoned:

> Although the ALJ did not explicitly find each job singularly constituted employment in significant numbers in the national economy, the ALJ's use of the phrase "representative occupations such as" prior to the findings, combined with the specific parsing of each job and its numbers available in the national economy, shows the ALJ relied on the jobs either singularly or in combination.

*Id*. at *4. The Court further observed that the unaffected jobs cumulatively represented 18,500 jobs nationally, thus providing substantial evidence upon which to uphold the step-five finding, citing *Atha v. Comm'r, Soc. Sec.*, 616 F. App'x 931, 935 (11th Cir. 2015) (finding

- 12 -

supported by substantial evidence at step five 23,800 jobs nationally available). The Court concluded that the ALJ did not reversibly err at step five. *See Daniels*, 2025 WL 814846, at *4.

Considering *Daniels*, perhaps there is an argument to be made in favor of finding harmless error in this case, such as that the overall context of the ALJ's analysis shows that the ALJ relied on the jobs either singularly or in combination. Defendant, however, has made no such argument and, aside from stating that no further fact-finding is necessary, does not expressly argue that any error is harmless or not reversible. (Doc. 12 at 9).

In *Viverette*, the ALJ failed to make a finding about whether the representative jobs, either separately or cumulatively, constituted a significant number, absent the job involving the discrepancy between the VE testimony and the DOT. *See* 13 F. 4th at 1318-1319. Here also, the ALJ failed to make an express finding about whether the office helper job separately constituted a significant number of jobs in the national economy.

Further, the ALJ found that the office helper job had 13,800 jobs nationally. "The Eleventh Circuit . . . has 'never held that a minimum numerical count of jobs must be identified in order to constitute work that 'exists in significant numbers' under the statute and regulations.'" *Hemmings*, 2023 WL 6173448, at *7 (citing *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 934 (11th Cir. 2015); *Brooks v. Barnhart*, 133 F. App'x 669, 671 (11th Cir. 2005)). Rather, "[w]hether there are a significant number of jobs a claimant is able to perform with his limitations is a question of fact to be determined by a judicial officer [i.e., the ALJ]." *Viverette*, 13 F.4th at 1318 (citing *Martinez v. Heckler*, 807 F.2d 771, 775 (9th Cir. 1986)) (internal citations omitted).

The undersigned also notes here that the jobs of small product assembler (12,000 jobs nationally) and routing clerk (42,000 jobs nationally) constitute the majority of jobs if they

were considered cumulatively together with the job of office helper (13,800) jobs. In other words, the problematic jobs do not constitute a small percentage of jobs such that a finding of harmless error would be more reasonable. *See Denmark*, 2022 WL 831903, at *8. Rather, the 13,800 office helper jobs constitute only about 20 percent of the total number (67,800) of all three jobs if they are considered collectively. In other words, this case can be distinguished from cases such as *Denmark,* where only a small percentage of jobs were affected by error.

Absent a more specific finding by the ALJ regarding whether the office helper job alone constitutes work that exists in significant numbers in the national economy and aligning with the apparent trend in the Middle District of Florida, the undersigned submits that "remand is the most appropriate disposition." *See Viverette*, 13 F.4th at 1318-19. As the Eleventh Circuit observed, "the issue of numerical significance entails many fact-specific considerations requiring individualized evaluation," which is best left to the "ALJ's common sense in weighing the statutory language as applied to a particular claimant's factual situation." *Id.* (citation omitted); *see also Charriez*, 2024 WL 5323731, at *5 ("*Viverette*-type errors require remand unless the decision contains factual findings about the proffered job categories both singly and in combination.").

I submit that this matter should be remanded to the agency so it may make the required factual findings in the first instance. In light of this recommendation, the undersigned need not reach Plaintiff's second issue raised on appeal regarding the ALJ's consideration of Plaintiff's subjective symptoms.

### IV. RECOMMENDATION

For the reasons stated above, I respectfully recommend that the ALJ's decision be **REVERSED** and **REMANDED** to the agency for further administrative proceedings.

**Recommended** in Ocala, Florida on August 15, 2025.

_____
PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy